UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:11-CR-6-TAV-CCS-2 |
| DEWYATT A. HILL, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 237]. For the reasons that follow, the motion will be denied.

**I. BACKGROUND**

On January 19, 2012, a jury found Defendant guilty of conspiracy to distribute and possess with intent to distribute schedule II controlled substances in violation of 21 U.S.C. ¶¶ 846 and 841(a) (Count One); three counts of armed pharmacy robbery in violation of 18 U.S.C. § 2118 (Counts Two, Six, and Eight); and three counts of using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Three, Seven, and Nine) [Doc. 119]. The Court originally sentenced Defendant to a total term of imprisonment of 852 months [Doc. 161]. On January 14, 2021, the Court granted Defendant's motion for resentencing based upon a retroactive sentencing

guidelines amendment[1] and reduced Defendant's sentence to a net term of 819 months [Doc. 231; *see also* Doc. 232].

Defendant filed his first motion for compassionate release on August 21, 2020 [Doc. 228]. The Court denied the motion because Defendant had failed to exhaust his administrative remedies with the Bureau of Prisons ("BOP") [Doc. 229]. In his second motion for compassionate release, which is now before the Court, Defendant seeks relief based on his health conditions amid the COVID-19 pandemic [Doc. 237].

Defendant is presently housed at United States Prison Coleman II, and his projected release date is October 26, 2071. *See* Inmate Locator, Bureau of Prisons, https//www.bop.gov.inmateloc/ (last visited Feb. 14, 2022).

## II. LEGAL STANDARD

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Section 3582(c)(1)(A)(i) of Title 18, United States Code authorizes district courts to consider defendant motions for sentence reduction based on "extraordinary and compelling reasons."

Before seeking compassionate release from the court, a defendant must first "exhaust the BOP's administrative process" or wait "thirty days after the warden has received the compassionate release request—whichever is earlier." *United States v. Jones*,

---

[1] Amendment 782 of the Federal Sentencing Guidelines.

980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of administrative remedies is a "mandatory condition" for defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). However, because the administrative exhaustion requirement operates as a "claim processing rule," it may be waived or forfeited by the Government. *Id*. at 833–34.

If the exhaustion requirement has been met, a court may grant a motion for compassionate release if (1) "extraordinary and compelling reasons merit a sentence reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the court has "considered the factors…in 18 U.S.C. § 3553(a), to the extent that they apply." § 3582(c)(1)(A). However, when the defendant, rather than the BOP, files a motion for compassionate release, the court "may skip step two of the [Section] 3583(c)(1)(A) inquiry" and has "full discretion to define 'extraordinary and compelling circumstances' without consulting the policy statement in [U.S.S.G.] § 1B1.13.'" *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). A motion for compassionate release may be denied when one of the substantive requirements is not met. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### III. ANALYSIS

#### A. Exhaustion

Defendant alleges that he has exhausted his administrative remedies with the BOP [Doc. 237, p. 2]. He does not provide the Court with any evidence that he has done so.

However, in the interests of judicial efficiency, the Court will address the merits of Defendant's motion.

### B. 18 U.S.C. § 3553(a) Factors

Under 18 U.S.C. § 3553(a), the Court considers the following factors in determining the sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . .

First, the Court considers the criminal conduct at issue in this case. Defendant, with the help of codefendants Gibson and Hopson, committed three armed robberies of CVS pharmacies, as described in the Presentence Report ("PSR"):

> On or about September 14, 2010, GIBSON and HILL robbed the CVS Pharmacy located at or near 2931 Alcoa Highway, Knoxville, Tennessee, using firearms. Before the robbery . . . GIBSON stole a GMC pickup truck, which GIBSON and HILL drove to the CVS Pharmacy and used as the getaway vehicle after completing the robbery. During the robbery . . . GIBSON ordered everyone in the store to the floor, jumped over the pharmacy counter to confront the pharmacy employee, pointed his firearm directly at a pharmacy employee, and demanded and received schedule II

4

controlled substances, including oxycodone. During the robbery . . . Hill guarded the front door of the pharmacy, ordered everyone in the store to the floor, pointed his firearm at the cash register employee, and obtained money from the front cash register, all while GIBSON was robbing the pharmacy employee at gunpoint. [PSR, ¶¶ 19–22].

On or about November 6, 2010, GIBSON, HILL, AND HOPSON robbed the CVS Pharmacy, located at or near 1315 Virginia Avenue, Bristol, Tennessee, using firearms. Before the robbery . . . GIBSON stole a Chevrolet pickup truck, which GIBSON, HILL, and HOPSON drove to the CVS Pharmacy and used as the getaway vehicle after completing the robbery. During the robbery . . . GIBSON jumped over the pharmacy counter to confront the pharmacy employee, pointed his firearm directly at a pharmacy employee, and demanded and received schedule II controlled substances, including oxycodone. During the robbery, HOPSON and HILL went directly to the cash register, ordered everyone to the floor, and pointed their firearms at CVS employees and customers, all while GIBSON was robbing the pharmacy employee at gunpoint. [PSR, ¶¶ 27–30].

On or about November 29, 2010, GIBSON, HILL, and HOPSON robbed the CVS Pharmacy, located at or near 2931 Alcoa Highway, Knoxville, Tennessee, using firearms. Before the robbery . . . GIBSON stole a Dodge pickup truck, which GIBSON, HILL, and HOPSON drove to the CVS Pharmacy and used as a getaway vehicle after completing the robbery. During the robbery . . . GIBSON jumped over the pharmacy counter to confront the pharmacy employees, pointed his firearm directly at the pharmacy employees, and demanded and received schedule II controlled substances, including oxycodone. During the robbery, HOPSON went behind the pharmacy counter to confront pharmacy employees and pointed his firearm directly at pharmacy employees while GIBSON acquired schedule II controlled substances from the pharmacy employees. During the robbery, HILL went directly to the cash registers at the front of the store, pointed his firearm directly at CVS employees, and demanded and received money from the cash registers, all while GIBSON and HOPSON were robbing the pharmacy employees at gunpoint. [PSR, ¶¶ 31–35].

These three robberies, almost identical in their facts, were both calculated and violent. Defendant played an integral role, which included pointing a gun at pharmacy employees during each of the three robberies. The Court finds that Defendant's offenses were severe

5

Case 3:11-cr-00006-TAV-CCS   Document 245   Filed 04/12/22   Page 5 of 8   PageID #: 1829

and that they emphasize the need for adequate deterrence, just punishment, and protection of the public from future offenses by the defendant.

The Court also considers Defendant's criminal history. Defendant's past record includes convictions for possession of a handgun while intoxicated (2007), public intoxication (2007), reckless endangerment (2000), felony evading (2000), DUI (2000), leaving the scene (2000), vehicular assault (2000), auto theft (2000), escape from penitentiary (1985), second degree burglary (1981), public intoxication (1980), escape (1976), receiving stolen property (1976), burglary of a motor vehicle (1975), shoplifting (1975), two convictions for second degree burglary (1975), public intoxication (1975) [PSR, ¶¶ 95–111]. Defendant's criminal history extends over a period of approximately 35 years and includes crimes involving harm to others and attempts to evade law enforcement. The Court finds that Defendant's criminal history weighs against release.

When reviewing the § 3553(a) factors, this Court may consider the amount of time that a defendant has served on a sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this case, Defendant was ultimately sentenced to a total term of imprisonment of 819 months [Doc. 231] and his projected release date is October 26, 2071, approximately 592 months from now. At this time, Defendant has not even served half of

6

his sentence. The Court finds that the significant period of time Defendant has left to serve on his sentence weighs against compassionate release.

The Court acknowledges Defendant's claims regarding his health conditions [Doc. 237]. Specifically, Defendant contends that he is vulnerable to COVID-19 due to the fact that he is 65 years of age, underweight, and suffers from advanced chronic pulmonary disease (COPD) and a heart condition [Doc. 237, p. 2]. The Court does not have Defendant's medical records before it. However, even assuming that Defendant suffers from the conditions he describes, Defendant's health concerns are still outweighed by the seriousness of his offenses, his criminal record, and the relatively small percentage of his sentence that he has served thus far. The Court also notes that to the extent that Defendant may be at an increased risk of complications from COVID-19, that risk is mitigated by the availability of vaccines.[2] *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (A defendant's "access to the COVID-19 vaccine substantially undermines his request for a sentence reduction" because "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated.").

After considering the applicable § 3353(a) factors and all evidence of record, the Court finds that the § 3353(a) factors weigh against granting compassionate release at this time. A sentence reduction in this case would not reflect the seriousness of the offenses of

---

[2] The Court is not aware of Defendant's vaccination status. However, at Defendant's prison, 5,122 inmates and 846 staff members have been fully vaccinated. *COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 14, 2022). Currently, two inmates and 11 staff members have actively tested positive COVID-11. *Id.*

conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant. While the Court notes Defendant's health concerns, on the record before the Court, the sentencing factors weigh against early release.

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 F.3d at 519. In this case, the § 3553(a) factors weigh against compassionate release, so the Court need not address whether Defendant has shown extraordinary and compelling reasons for release.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release [Doc. 237] is **DENIED**.[3]

**IT IS SO ORDERED.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that its denial of Defendant's motion for compassionate release is without prejudice. If Federal Defender Services of Eastern Tennessee ("FDSET") reviews Defendant's motion and determines that filing a supplement is in Defendant's best interest, the Court will review FDSET's filing and determine whether Defendant is entitled to compassionate release at that time.